UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRISON S. JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CDCR, et al.,<br><br>    Defendants. | Case No.: 1:10-cv-00582-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>[ECF Nos. 52, 57] |

Plaintiff Garrison S. Johnson is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**BACKGROUND**

This action is proceeding on Plaintiff's second amended complaint, filed April 19, 2013, This action is proceeding on Plaintiff's second amended complaint against Defendants D. Foston, M.D. Biter, R. Grissom, F. Ozaeta, Matthew Cate, M. Bostanjian, and an unknown number of Does for subjecting Plaintiff to conditions of confinement, in violation of the Eighth Amendment, and against Defendant California Department of Corrections and Rehabilitation (CDCR) in its official capacity for violations of the Americans with Disabilities Act and Rehabilitation Act.

On December 5, 2013, Defendants Cate and CDCR filed a motion to dismiss the second amended complaint for failure to state a cognizable claim. On December 20, 2013, Defendants Ozaeta

and Biter filed a motion to dismiss for failure to state a cognizable claim. On January 23, 2014, Defendant Foston joined in Defendant Ozaeta and Biter's motion to dismiss. On February 4, 2014, Defendant Grissom joined in Defendants' motion.

Plaintiff filed separate oppositions to Defendants' motions on December 26, 2013, and January 6, 2014, respectively.

On January 22, 2014, Defendants Cate and CDCR filed a reply to Plaintiff's opposition.

On January 23, 2014, Defendants Biter, Ozaeta, and Foston filed a reply to Plaintiff's opposition.

## II.

## DISCUSSION

**A.     Legal Standard**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted), cert. denied, 132 S.Ct. 1762 (2012). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th

Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

### B. Allegations of Second Amended Complaint

In the second amended complaint, Plaintiff alleges that he suffers from a serious mental disorder which consists of "organic hallucinosis secondary to trauma of gunshot wound to head; psychosis due to drug abuse and head trauma due to bullet lodged in Plaintiff's head; Organic Brain Syndrom[e]." Plaintiff alleges that his mental disability requires that he be placed on single-cell status and that Defendants failed to accommodate his medical needs. Plaintiff alleges that he requires single-cell status because he fears his cellmates will physically attack him because of his mental disability and/or "Plaintiff himself will attack a cellmate, without being able to control himself due to his mental disability."

On September 7, 2009, Plaintiff filed an ADA appeal with Defendant Ozaeta requesting single-cell status due to his mental disability. Plaintiff informed Defendant Ozaeta that he previously had single-cell status due to his mental illness. On September 17, 2009, Defendants Ozaeta and Grissom denied Plaintiff's accommodation request at the first level of appeals. The denial stated, "[Y]ou have been on single cell status since November 6, 2005, your concern stems from pending litigation. You do not appear to meet the criteria set forth by the [CDCR] for cell status."

On September 29, 2009, Plaintiff submitted his ADA appeal to the second level of appeal. Plaintiff stated in his appeal that he did not agree with the decision because his need for single-cell status was due to mental illness. On October 14, 2009, Defendant Biter denied Plaintiff's accommodation request. On October 21, 2009, Plaintiff submitted his third ADA appeal at the director's level of appeals. Plaintiff stated in is appeal that his "mental health issue ha[d] recurred, and he ha[d] been subjected to deliberate indifference to his serious medical needs concerning his need for single cell status." On February 4, 2010, Defendant Foston denied Plaintiff's appeal at the director's level. The denial stated that "single cell status is a custody committee classification issue, which cannot be granted or govern[ed] by medical or mental health. The Plaintiff's request for single cell status has been not medically necessary by the current medical staff in charge of the Plaintiff's care."

///

Defendant Bostijanian repeatedly denied Plaintiff's requests for single-cell-status. On October 29, 2010, Plaintiff informed Defendant Bostanjian that he heard voices telling him his cellmates were going to harm him and that Plaintiff believed he would harm his cellmate in self-defense due to the voices. As a result, Defendant Bostanjian admitted Plaintiff in the Correctional Treatment Center under suicide status even though Plaintiff never claimed to be suicidal. Plaintiff alleges that Defendant Bostanjian placed him on suicide status because Plaintiff repeatedly asked her to be placed on single-cell status. While on suicide status, Plaintiff was placed in a freezing room for five days with no clothing except a vest. On October 28, 2010, Doe Defendants refused to place Plaintiff on single-cell status to accommodate his mental health disability.

Finally, Plaintiff alleges that Defendants CDCR and Matthew Cate have promulgated or implemented a policy of discriminating against inmates with mental health issues and not providing them single-cell-status. Additionally, Plaintiff alleges that Defendants CDCR and Cate promulgated or implemented a policy of placing inmates in freezing cold cells when they are placed on suicide status. Plaintiff alleges that these policies were the moving force of the constitutional violations against him.

### C.     Defendants' Motions to Dismiss

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue. . . ." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995 (1992). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Hudson, 503 U.S. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

4

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious. . . ." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety. . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

### 1. Defendant Cate Promulgate/Implement Policy Preventing Single-Cell Status

Plaintiff alleges that Defendant Cate implemented or promulgated a policy that prevented Plaintiff from being single-cell housed. However, in Plaintiff's second complaint, he concedes that he had previously been single-cell housed based on his mental health. In 2009, when Plaintiff requested to be single-cell housed, Plaintiff was informed that he did not meet the criteria for single cell as medically necessary. Consequently, Plaintiff's contention that Defendant Cate implemented or promulgated a policy preventing single-cell status based on mental health conditions, clearly was not the moving force behind his alleged constitutional violation because he was previously housed as single-cell, and his claim is not plausible. In addition, Plaintiff has not provided sufficient factual detail to support a finding that such alleged policy existed. Therefore, the Court finds that Plaintiff's claim that Defendant Cate implemented or promulgated a policy which denied him single cell status be dismissed from the action, without leave to amend, for failure to state a cognizable claim.

///

///

   2. <u>Defendant Cate Promulgate/Implement Policy Regarding Placement in Freezing Cell</u>

  Plaintiff alleges that he was placed on suicide status for five days in a freezing room with no clothing except a vest. Plaintiff further alleges that Defendants CDCR and Cate promulgated or implemented a policy of placing inmates in freezing cold cells when they are placed on suicide status.

  Defendants argue that Plaintiff's allegations amount to no more than a formulaic recitation of the elements of an Eighth Amendment violation, and Plaintiff failed to present a factual basis to support his assertion.

  The Court does not find Defendants' argument persuasive. Viewing Plaintiff's second amended complaint liberally, as this Court must, Plaintiff has stated a cognizable claim. In his second amended complaint, Plaintiff alleges that "Defendant Cate and CDCR has promulgated or implemented a policy, practice or custom of stripping inmates naked, including Plaintiff and placing them in cold freezing cells when they inform CDCR mental staff that they are hearing voices telling them that their cellmates are going to harm them, and they should attack their cellmates which is so deficient that the policy, practice or custom is a repudiation of Plaintiff's constitutional rights and is the moving force of the constitutional violation." Plaintiff's allegations sufficiently set forth the factual basis of the alleged policy, practice or custom to which he was the subject, and Defendants are not entitled to dismissal of this claim. Given that CDCR is required to provide humane conditions for each inmate, including proper temperature control of the cells and adequate clothing, Plaintiff allegations are sufficient, at the pleading stage, to state a plausible Eighth Amendment claim based on the alleged policy. Thus, the Court will recommend that Defendants' motion to dismiss this claim be denied.

   3. <u>Americans with Disabilities Act and Rehabilitation Act Claim Against CDCR</u>

  There is no significant difference in analysis of the rights and obligations created by the ADA and Rehabilitation Act." <u>Zukle v. Regents of Univ. of Cal.</u>, 166 F.3d 1041, 1046 n.11 (9th Cir. 1999.) Title II of the ADA "prohibit[s] discrimination on the basis of disability." <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C.

1  § 12132.  Title II of the ADA applies to inmates within state prisons.  Pa. Dept. of Corrs. v. Yeskey,
2  118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997);
3  Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).  However, when prison regulations impinge
4  on inmates' constitutional or statutory rights, the regulation is valid if it is reasonably related to a
5  legitimate penological interest.  Gates v. Rowland, 39 F.3d 1439 (9th Cir 1994) (finding that a
6  prisoner's rights under the RA were subject to the reasonableness standard set forth in Turner v.
7  Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987)).

8  "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a
9  qualified individual with a disability; (2) [he] was excluded from participation in or otherwise
10 discriminated against with regard to a public entity's services, programs, or activities; and (3) such
11 exclusion or discrimination was by reason of [his] disability."  Lovell, 303 F.3d at 1052.  Facially
12 neutral policies may violate the ADA when such policies unduly burden disabled persons, even when
13 such policies are consistently enforced. See, e.g., Martin v. PGA Tour, Inc., 204 F.3d 994, 999–1000
14 (9th Cir. 2000) (holding that a golf association rule banning use of golf carts in certain tournaments
15 violated the ADA when it failed to modify this rule for a disabled golfer with a mobility impairment),
16 aff'd, 532 U.S. 661 (2001).

17 A plaintiff may bring a claim under Title II of the ADA against state entities for injunctive
18 relief and damages.  See Phiffer v. Colum. River Corr. Inst., 384 F.3d 791 (9th Cir. 2004); Lovell, 303
19 F.3d at 1050-51.  However, a plaintiff cannot seek damages pursuant to the ADA against the
20 defendants in their individual capacities.  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).  To
21 the extent a plaintiff seeks to pursue claims against any individual defendant for violations of the
22 ADA, he may do so only with respect to seeking injunctive relief and only as to individual defendants
23 he has named in their official capacities.  Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187–88 (9th Cir.
24 2003) (Title II's statutory language does not prohibit injunctive action against state officials in their
25 official capacities); see also Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (plaintiffs seeking
26 only prospective injunctive relief from defendants in their official capacities).

27 Defendants argue that Plaintiff was denied only an accommodation, not a service, program or
28 activity within the meaning of the ADA and RA.  Defendants further argue that Plaintiff has failed to

state any facts showing that he is in need of single-cell status because of his disability, and CDCR staff informed Plaintiff that single-cell status was not medically indicated.

At the pleading stage, the Court declines to find that Plaintiff's allegations are insufficient to support a plausible claim that he had a disability within the meaning of the ADA. In the second amended complaint, Plaintiff alleges that he suffers from a serious mental disorder, namely, "organic hallucinosis secondary to trauma of gunshot wound to head; psychosis due to drug abuse and head trauma due to bullet lodged in Plaintiff's head." His mental disability requires that he be placed in single-cell status to prevent an attack from a cellmate or an attack by Plaintiff. Plaintiff has sufficiently alleged that the failure to place Plaintiff in single-cell status did not accommodate his mental disability, and prison officials denied such placement based on his medical condition.

### 4. Defendants Biter, Ozaeta, Foston, and Grissom

Plaintiff alleges that through the appeals process, Defendants Biter, Ozaeta, Foston, and Grissom subjected him to inhumane conditions of confinement by denying his request for single-cell status.

Defendants argue that Plaintiff has not met either the objective or subjective requirement necessary to state a cognizable Eighth Amendment violation. Defendants contend that because double-celling is constitutional, the objective component of an Eighth Amendment claim cannot be met because double-celling is not a sufficiently serious deprivation. In addition, Defendants argue that Plaintiff has not demonstrated that they knew of and disregarded a substantial risk of serious harm.

Plaintiff's allegations are sufficient to state a plausible Eighth Amendment claim against Defendants Biter, Ozaeta, Foston. and Grissom. Plaintiff alleges that he suffers from a serious mental disorder which consists of "organic hallucinosis secondary to trauma of gunshot wound to head; psychosis due to drug abuse and head trauma due to bullet lodged in Plaintiff's head; Organic Brain Snydrom[e]." Plaintiff alleges that his mental disability requires that he be placed on single-cell status and that Defendants failed to accommodate his medical needs. According to Plaintiff, he requires single-cell status because he fears his cellmates will physically attack him because of his mental disability and/or "Plaintiff himself will attack a cellmate, without being able to control himself due to his mental disability." Plaintiff's allegations that each Defendant denied his request for single-cell

status, despite the fact that it was medically necessary to prevent a substantial risk of serious harm, states a cognizable Eighth Amendment violation against Defendants Biter, Ozaeta, Foston, and Grissom.  Thus, Defendants' motion to dismiss this claim should be denied.

## III.

## RECOMMENDATION

Based on the foregoing,

IT IS HEREBY RECOMMENDED that:

1. Defendants motion to dismiss Plaintiff's claim against Defendant Cate for promulgating or implementing a policy to discriminate against Plaintiff by denying him single-cell status be GRANTED; and

2. Defendants motion to dismiss be DENIED in all other respects.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 18, 2014**

UNITED STATES MAGISTRATE JUDGE